## WORDEN *v.* SEARLS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

Argued March 17, 1887. — Decided March 28, 1887.

Reissued letters-patent No. 5400, granted to Erastus W. Scott and Anson Searls, May 6th, 1873, for an "improvement in whip-sockets," on an application for reissue filed January 16, 1873, (the original letters-patent, No. 70,627, having been granted to E. W. Scott, November 5, 1867, on an application filed August 23, 1867,) are invalid, as an unlawful expansion of the original patent.

A whip-holder constructed in accordance with the specification and drawings of letters-patent No. 70,075, granted to Henry M. Curtis and Alva Worden, October 22, 1867, for an "improvement in self-adjusting whip-holder," did not infringe the original Scott patent, regarding the Scott invention as earlier in date than that of Curtis and Worden, and the Scott patent was reissued with a view of covering the device of Curtis and Worden.

In a suit in equity, on the patent, a preliminary injunction having been granted and violated, the Circuit Court, in proceedings and by two orders, entitled in the suit, found the defendants guilty of contempt, and, by one order, directed that they pay to the plaintiff $250, "as a fine for said violation," and the costs of the proceeding, and stand committed till payment; and, by the other order directed that the defendants pay a fine of $1182 to the clerk, to be paid over by him to the plaintiff "for damages and costs," and stand committed till payment, the $1182 being

made up of $682 profits made by the infringement, and $500 expenses of the plaintiff in the contempt proceedings; this court, in reversing a final money decree for the plaintiff, and dismissing the bill, reversed also the two orders, but without prejudice to the power and right of the Circuit Court to punish the contempt by a proper proceeding.

BILL in equity to restrain infringement of letters-patent and for assessment of damages. Decree for complainant, from which respondents appealed. The case is stated in the opinion of the court.

*Mr. Charles J. Hunt* for appellants. *Mr. Thomas S. Sprague* was with him on the brief.

*Mr. J. P. Fitch* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Eastern District of Michigan, by Anson Searls against Alva Worden and John S. Worden, for the alleged infringement of reissued letters-patent, No. 5400, granted to Erastus W. Scott and Anson Searls, May 6, 1873, for an "improvement in whip-sockets," on an application for reissue filed January 16, 1873, the original letters-patent, No. 70,627, having been granted to E. W. Scott, November 5, 1867, on an application filed August 23, 1867. One of the defences set up in the answer is, that the reissued letters-patent are not for the same invention as that described and claimed in the original letters-patent, and contain new matter not contained or claimed in the original.

The specification and claim and drawings of the original patent are as follows:

"Be it known that I, E. W. Scott, of Wauregan, in the county of Windham and State of Connecticut, have invented a new and useful improvement in whip-sockets; and I do hereby declare that the following is a full, clear, and exact description thereof, which will enable others skilled in the art to make and use the same, reference being had to the accompanying drawings, and to the letters of reference marked thereon.

"This invention relates to a new and improved fastening applied to a whip-socket in such a manner as to hold the whip firmly therein, prevent it from moving or shaking laterally, and at the same time not interfere in the least with its ready insertion in the socket and its withdrawal therefrom. In the accompanying sheet of drawings, Figure 1 is a vertical central section of my invention taken in the line $x$ $x$, Fig. 2; Fig. 2, an external view of the same. Similar letters of reference indicate like parts.

"The whip-socket A may be made of cast-iron, hard rubber, or any of the materials no.  used for such purpose. Cast-iron, however, would probably be the preferable material. The socket may have an opening, $a$, at its bottom, to admit of the escape of water, dust, &c., and in the side of the socket there is an opening or slot, $a'$, extending nearly its whole height or length. In this slot there is secured a fulcrum-pin, $b$, a lever,

B, which is slightly curved, as shown clearly in Fig. 1, the fulcrum-pin being rather below the centre of the lever, and the latter provided with a projection, $b'$, near its fulcrum-pin, which renders the lower part of the lever heavier than its upper part, with its centre of gravity at one side of its fulcrum-pin, so that the upper end $c$ of the lever will have a tendency to move out from within the socket, as indicated by the arrow 1. The lower end of the lever B is so curved as to extend within the lower part of the socket at all times, and, when the socket is empty, no whip in it, the upper end $c$ of the lever will be in the slot $a$, if not out from it, so as not to form any obstruction to the butt of the whip C as it is shoved into the socket; but when the butt of the whip reaches the lower part of the socket it strikes the lower curved end of the lever B, and throws the upper end $c$ of the same in contact with the butt (see Fig. 1), the weight of whip keeping the upper end $c$ of the lever in contact with the butt, and holding the whip steady in the socket. In withdrawing the whip from the socket the upper end $c$ of the lever moves freely outward from the butt as soon as the lower end of the lever is relieved of the weight of the whip. This simple device has been practically tested, and it operates well. There are no springs required, and no parts used which are liable to get out of repair, or become deranged so as to be inoperative.

" Having thus described my invention, I claim as new and desire to secure by letters-patent:

" A whip-socket provided with a fastening composed of a lever, arranged or applied substantially as shown and described, to hold the whip steady or firm in its socket, as set forth."

The specification and claims of the reissue are as follows, the drawings of the reissue being substantially the same as those of the original:

" Be it known that I, Erastus W. Scott, of Wauregan, in the county of Windham and state of Connecticut, have invented certain new and useful improvements in whip-sockets, which are simple in construction, efficient in operation, and durable in use; and the improvements consist in the use of a

lever with the stationary or upright portion of the socket, and in the construction and combination of the parts, as hereinafter more fully described; and I do hereby declare that the following is a full, clear, and exact description thereof, which will enable others skilled in the art to which it appertains to make and use the same, reference being had to the accompanying drawing, with letters of reference marked thereon, forming a part of this specification, in which Fig. 1 is a central vertical section, taken on line $x\,x$ of Fig. 2, of a socket embodying my invention, and Fig. 2 is an elevation of the same.

" A represents a tubular socket provided with a suitable flange at the top, and the interior of the bottom part of the socket gradually decreases in size, being constructed in a partially cone form, as shown. The socket A is provided with a suitable fastener for the purpose of securing the same to the carriage. The socket A is provided with a slot $a'$, extending a sufficient distance to admit the lever B, which is suitably pivoted to the part A in such a manner as to move on its pivot, for a purpose presently described. This lever B extends upward and downward from its pivot and inclines or curves inward from the pivot to each end, so that each end of the lever, or a point near each end of the lever, forms a bearing point for the whip C when inserted in the socket, while the opposite side of the whip-stock C bears upon the socket A, as shown in Fig. 1. The lever B is pivoted to the socket A at a point inside of its centre of gravity, so that when the whip is removed the upper part of the lever automatically moves outward, as indicated by the arrow, leaving the top of the socket open for the reception of the whip. The same outward movement of the top of the lever would be caused by the butt of the whip when withdrawn from the socket.

" The operation is as follows: The whip C being removed from the socket, the upper part of the lever falls outward, as above described, leaving the top of the socket open. The whip, then being again inserted in the socket, first comes in contact with the lower inclined or curved part $e$ of the lever B, and, as the whip passes down, the lower part $e$ of the lever is pressed outward, which action brings the upper part $c$ inward

until it is brought to bear firmly against the whip C, and thus holding the whip securely between the lever and the opposite side of the socket. A. By this means a whip of any ordinary size may be firmly and securely held in position.

" Having thus fully described the invention, what is claimed and desired to be secured by letters-patent is —

" 1. The combination of a stationary part of a whip-socket and a lever, the lever being hinged or pivoted so that the lever bears against the whip at or near the ends of the lever, to hold the whip in position, for the purpose set forth.

" 2. The lever B, curved or inclined inward from its point of pivot, and used in connection with the stationary part A, substantially as and for the purpose specified.

" 3. The lever B, pivoted at a point inside of its centre of gravity, so that when left free the upper part of the lever will fall outward, substantially as and for the purpose set forth."

The bill was filed in July, 1880. On the 19th of July, 1880, a preliminary injunction was issued and served. In the answer, filed in September, 1880, it was set up that the defendants were making and selling whip-sockets constructed under and in accordance with the specification and drawings of letters-patent No. 70,075, owned by them, granted to Henry M. Curtis and Alva Worden, October 22, 1867, for an "improvement in self-adjusting whip-holder." After replication and proofs, the case was heard, and, on the 24th of February, 1882, an interlocutory decree was made, declaring that the reissue was valid and had been infringed, and awarding a perpetual injunction, and a reference as to profits and damages. On the 6th of March, 1882, an order was made, entitled in the cause, imposing a fine of $250 on the defendants, to be paid by them to the complainant, for a violation of the preliminary injunction. This order was opened on the 29th of April, 1882, for a further hearing, and on the 9th of October, 1882, an order was made, entitled in the cause, imposing a fine of $1182 on the defendants for such violation, to be paid to the clerk of the court, and by him to be paid over to the plaintiff for damages and costs, the defendants to stand committed until the same should be paid. 13 Fed. Rep. 716. An

appeal by the defendants from this order was allowed, and an order was made that all proceedings to enforce the collection of the fine be stayed until the further order of the Circuit Court, on the giving of a specified bond, which bond was given. On the report of a master on the reference under the interlocutory decree, a final decree was entered that the plaintiffs recover against the defendants $24,573.91 as profits and $386.40 costs. From this decree the defendants have appealed.

The specification and claim and drawings of the Curtis and Worden patent are as follows:

"Be it known that we, Henry M. Curtis and Alva Worden, of Ypsilanti, in the county of Washtenaw and State of Michigan, have invented a new and useful machine for holding carriage-whips, which we denominate 'Curtis and Worden's Self-Adjusting Whip-Holder;' and we do hereby declare that the following is a full, clear, and exact description of the construction and operation of the same, reference being had to the annexed drawings, making a part of this specification, in which Figure 1 is a sectional view. Fig. 2 is a perspective view of the whip-holder complete, and ready for use, without the whip. Fig. 3 is a perspective view of the whip-holder complete, closed upon the whip-handle.

"The whip-holder is formed of metal, cast or pressed to the desired shape, and is composed of two pieces only, Fig. 1 representing one sectional half and the other sectional half being formed exactly like it, with the exception of the loops A A, used for the purpose of attaching the same to the carriage-seat or dash-board. Each section of the whip-holder is a cone-shaped half-cylinder, the cone being reversed near the bottom of the whip-holder, forming each half-section bilged or barrel-shaped, and connected together at the bilge by an ear-shaped hinge, B, on each half-section, the ears being connected together by a rivet, forming the hinge. The edge or face of each cylinder-section is formed by an obtuse angle at the hinge, so constructed that when the two sections are connected together at the hinge B the whip-holder above the joints or hinge is open, and shut or closed below from its own

weight, as in Fig. 2. When the whip is inserted the holder opens at the bottom, below the joints or hinge, by the pressure of the whip upon the convex conical sides of the holder, and

*No. 2.*

*No.1.*

*No. 3.*

closes at the top of the holder around the whip, thus clasping the whip firmly at the top and bottom of the holder, and holding it steady and firmly in its place. The whip may be easily drawn out by a perpendicular motion, the holder opening at the top and closing at the bottom, so that the whip is readily detached.

"What we claim as our invention, and desire to secure by letters-patent is —

"The shape and construction of the whip-holder, and the connection of the two sectional halves by hinges or joints, in such a manner as to hold the whip, when inserted, closely and firmly, by clasping the same at the top and bottom of the holder at the same time, the holder being formed of metal,

cast or pressed into proper shape, substantially as and for the purpose set forth and described."

The Circuit Court, in deciding the case, 11 Fed. Rep. 501, and 21 Off. Gaz. 1955, said: "A glance at the drawings and specifications will show that the patents" (the original and the reissue) "are for the same invention, viz., a whip-socket arranged with a lever swung upon a central pivot, and operating so as to admit the whip without difficulty, and hold it firmly in position, and at the same time not preventing its easy withdrawal. So far from there being any attempt in the reissue to expand the claim of the original patent, and embrace devices which might have come into use since the original patent was granted, its purpose was evidently only to make that definite which had before been obscure, and to set forth in more precise and accurate terms the details of the invention. I regard the reissue in this case as a perfectly legitimate use of the privileges conferred by the Act upon that subject."

As we are of opinion that the defendants' whip-socket did not infringe the claim of the original Scott patent, and that the reissue was, in its claims, an unlawful expansion of the original, designed to cover the defendants' structure, it is not necessary to consider any other matter of defence.

The application for the original Scott patent and the application for the Curtis and Worden patent were before the Patent Office at the same time. The application for the Scott patent was filed August 23, 1867. It was issued November 5, 1867. The Curtis and Worden patent was issued October 22, 1867. The date it was applied for is not shown. Although the date of the Scott invention may be earlier than that of the Curtis and Worden invention, each patent was evidently granted for the specific apparatus covered by its claim. There was no conflict or interference between them, and no interference between their claims was declared. Their claims, as granted, placed side by side, were as follows:

| *Curtis and Worden.* | *Scott.* |
|---|---|
| "The shape and construction of the whip-holder, and | "A whip-socket provided with a fastening composed of |

the connection of the two sectional halves by hinges or joints, in such a manner as to hold the whip, when inserted, closely and firmly, by clasping the same at the top and bottom of the holder at the same time, the holder being formed of metal, cast or pressed into proper shape, substantially as and for the purpose set forth and described." a lever, arranged or applied substantially as shown and described, to hold the whip steady or firm in its socket, as set forth."

The specification of the original Scott patent stated the invention to be "a new and improved fastening applied to a whip-socket." The socket is described as a complete whip-socket, complete in itself without the fastening, and having in its side an opening or slot, extending nearly its whole height or length, in which slot is inserted a lever. The claim is for "a whip-socket," that is, a complete whip-socket, "provided with a fastening composed of a lever, arranged or applied substantially as shown and described," that is, inserted in the slot in the socket. The defendants' structure consists only of two sectional halves, each like the other, and each a cone-shaped half-cylinder, and bilged, with an ear-shaped hinge on each half-section, a rivet connecting the two forming the hinge. This arrangement does not infringe the claim of the Scott original patent. It is not a complete whip-socket provided with a lever arranged or applied substantially as in Scott's apparatus, that is, pivoted in a slot in the socket. It is true that the result in each arrangement is to hold the whip steady or firm in a socket, but the mechanisms are different.

That the specification and claims of the reissue were designedly so worded as to cover a structure which the claim of the original patent would not cover is manifest. Thus, the original specification says that the invention relates to a "fastening applied to a whip-socket in such a manner as to hold the whip firmly therein." This means that you have a complete whip-socket and you apply a fastening to it, which fasten-

ing is so arranged as to hold the whip firmly in the socket in which the whip is placed. The description in the original specification describes a complete whip-socket, with an opening or slot in the side of the socket, extending nearly its whole height or length, with a fastening lever secured in the slot by a fulcrum-pin rather below the centre of the lever, the lever having near the fulcrum-pin a weighting projection, $b'$. The reissued specification says that the "improvements consist in the use of a lever with the stationary or upright portion of the socket." The socket is referred to as if it had a part which is not stationary. The first and second claims carry out the same idea, by making the "stationary part" of the socket an element in each of those claims. The defendants' holder is not a complete holder with its stationary part alone, and without its movable part, while the plaintiff's is. Moreover, all mention of the weighting projection $b'$ is omitted in the reissued specification. The design manifest in it is to cover such a structure as that of the defendants, and the evidence tends to the conclusion that that was the object of obtaining the reissue. The description and claim of the original specification were entirely adequate to cover the Scott device. No inadvertence, accident or mistake is shown.

The reissue is sought to be sustained, by the counsel for the appellee, on the ground that the invention described in each of the two specifications is "the combination with a whip-socket of a lever which operates to hold the whip firmly therein and prevent it from moving or shaking laterally." Even if such a claim would be valid, it is not the claim made in the original patent. And even if it were the claim made by that patent, the reissue purports to claim, not a combination of a whip-socket and a lever, but the combination of the stationary part of a whip-socket and a lever.

We are, therefore, of opinion that this reissued patent is invalid.

The appellants ask for a review and reversal of the orders imposing fines for a violation of the preliminary injunction. The appellee contends that this court cannot review the action of the Circuit Court in punishing a contempt committed by a

violation of such injunction, (1) because the proceedings were criminal in their character; (2) because the action of the Circuit Court is, by § 725 of the Revised Statutes, expressly made discretionary.

All the proceedings which resulted in the imposition of the fines were taken and entitled in the suit. The order of March 6, 1882, is entitled in the suit, and adjudges "that the said defendants are guilty of the contempt charged against them for a violation of the injunction issued in this cause, and that said defendants, Alva Worden and John S. Worden, pay to said complainant, Anson Searls, the sum of two hundred and fifty dollars, as a fine for said violation, together with costs of said proceedings, to be taxed, and that said defendant stand committed until the same be paid." The order of October 9, 1882, is entitled in the suit, and orders "that said defendants, Alva Worden and John S. Worden, do pay a fine of eleven hundred and eighty-two dollars to the clerk of this court, to be paid over by said clerk to complainant for damages and costs, and that said defendants do stand committed until the same is paid." It appears that the $1182 was made up of $682, the profits of the defendants on 62 gross of whip-sockets sold, and $500, expenses of the plaintiff in the contempt proceedings.

We have jurisdiction to review the final decree in the suit and all interlocutory decrees and orders. These fines were directed to be paid to the plaintiff: We say nothing as to the lawfulness or propriety of this direction. But the fines were, in fact, measured by the damages the plaintiff had sustained and the expenses he had incurred. They were incidents of his claims in the suit. His right to them was, if it existed at all, founded on his right to the injunction, and that was founded on the validity of his patent. The case differs, therefore, from that of *Ex parte Kearney*, 7 Wheat. 39. That was an application to this court for a writ of habeas corpus where a person was imprisoned by the Circuit Court of the District of Columbia, for a contempt in refusing, as a witness, to answer a question on the trial of an indictment. The application was denied on the ground that this court had no appellate jurisdiction in a criminal case.

So, the fact in the present case, that, though the proceedings were nominally those of contempt, they were really proceedings to award damages to the plaintiff, and to reimburse to him his expenses, distinguishes the case from that of *New Orleans* v. *Steamship Co.*, 20 Wall. 387. There, in a suit in equity, a Circuit Court of the United States imposed a fine on a defendant for obtaining, during the pendency of the suit, from a State Court, an injunction against the plaintiffs, as to a matter within the scope of the litigation. On appeal from the final decree, it was sought to review the order imposing the fine, but this court said that the fine was beyond its jurisdiction, and added: "Contempt of court is a specific criminal offence. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing. This court can take cognizance of a criminal case only upon a certificate of division in opinion."

Section 725 of the Revised Statutes provides that the courts of the United States shall have power to punish, " by fine or imprisonment, at the discretion of the court, contempts of their authority," provided that such power " shall not be construed to extend to any cases except . . . the disobedience by . . . any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts." We do not think this provision makes the action of the Circuit Court in this case such a matter of discretion that the orders imposing the fines are not reviewable. They were, to all intents and purposes, orders in the course of the cause, based on the questions involved as to the legal rights of the parties.

Although the court had jurisdiction of the suit and of the parties, the order for the preliminary injunction was unwarranted as a matter of law, and the orders imposing the fines must, so far as they have not been executed, be held, under the special circumstances of this case, to be reviewable by this court, under the appeal from the final decree. The result is, that they cannot be upheld.

Syllabus.

*The final decree of the Circuit Court, and the orders of March 6, 1882, and October 9, 1882, are reversed, and the case is remanded to that court with a direction to dismiss the bill, with costs, but without prejudice to the power and right of the Circuit Court to punish the contempt referred to in those orders, by a proper proceeding. The preliminary injunction was in force until set aside.* (See *In re Chiles,* 22 Wall. 157.)