[File Nos. 6245–6263.]

NORTHERN PACIFIC RAILWAY COMPANY, Respondent, v. NORTHERN REO COMPANY, a Corporation, et al.

and

NORTHERN REO COMPANY, a Corporation, and Dan Polis, Appellants.

(259 N. W. 95.)

Opinion filed February 20, 1935.   Rehearing denied March 13, 1935.

*Lawrence, Murphy, Fuller & Powers,* for appellants.

*Conmy, Young & Conmy,* for respondent.

Burke, Ch. J. There are three appeals from orders of the District Court of Cass county adjudging the appellants, Northern Reo Company and its president, Dan Polis, guilty of contempt in violating an injunctional decree duly made in the case of Northern P. R. Co. v. Northern Reo Co. 64 N. D. 68, 250 N. W. 329. These appeals were briefed and argued together and are all considered in this decision.

The first appeal is from an order of the District Court of Cass County adjudging the appellant, Northern Reo Company and its president,

Dan Polis, guilty of contempt and imposing a fine of $250 to be paid to the respondent as liquidated damages.

The Northern Reo Company had leased from the Northern Pacific Railway Company, for a term of twenty years, a certain portion of the railway station grounds, at the station in Fargo, North Dakota. The lease provides that the lessee will occupy and continue to use the premises, during the term of said lease, for the purpose of maintaining an automobile warehouse and no other. The action was brought to enjoin and restrain the defendant Reo Company from conducting and operating a public filling station on said premises and judgment was duly entered enjoining and restraining the defendant from operating a public filling station on said premises. On the return of the remittitur to the district court a judgment, injunctional order and decree was entered as follows:

"It is Ordered, Adjudged and Decreed that the defendants and each of them, their officers, servants and agents, are permanently enjoined and restrained from further operating and maintaining a public filling station upon the following described premises, located in the City of Fargo, Cass County, North Dakota, to-wit:

"All that portion of its station grounds and its station in Fargo lying between Front Street and a line parallel with and distant 70 feet northerly thereto and between the easterly line of Fourth Street South and a line parallel with and distant 72 feet easterly thereto, said property being located on the corner of Fourth and Front Streets in the City of Fargo and known as 323 Front Street.

"It is Further Ordered, Adjudged and Decreed that the defendants and each of them, their officers, servants and agents, are permanently enjoined and restrained from servicing cars in the open space on the South and Southeast end of said building, and from servicing cars in the garage until the building is reconstructed in such a way that it cannot be said to be a public filling station.

"It is Further Ordered, Adjudged and Decreed that the defendants and each of them, their officers, servants and agents, are permanently enjoined and restrained from servicing to oil and gasoline cars brought to the garage of the Northern Reo Company until the said Northern Reo Company changes the outside appearance of the building so that it will not have the appearance of a public filling station.

"It is Further Ordered, Adjudged and Decreed that the plaintiff have judgment against the defendants for its costs and disbursements in this court and in the Supreme Court, to be taxed and allowed by the Clerk."

Judgment was duly entered on this order.

The judgment, injunctional order and decree were served upon the defendant, Dan Polis, and thereafter the trial court issued its order, supported by affidavits, and returnable at the Chambers of the Court at Fargo, December 8, 1933, requiring the Northern Rco Company and its president, Daniel Polis, at that time and place to show cause why they should not be punished for contempt of the injunctional decree entered in the main action.

The matter came on for hearing, at Fargo, North Dakota, before Hon. W. H. Hutchinson, sitting at the request of Judge Holt, and was heard upon affidavits, photographs and the answers of Dan Polis to interrogatories. On such evidence Judge Hutchinson made his findings of fact and conclusions of law. He found, as facts, that after the service of the injunctional order upon Dan Polis certain changes were made in the appearance of the garage as follows: The "One Stop Service" sign, the gas sign and the outside Neon sign were removed. A short partition was built facing Front street at the corner, which excluded from view to parties driving on Front street the gasoline pumps located at the corner, but did not exclude from view these pumps to parties driving on Fourth street. There was a partial closing of the opening on Front street, leaving the opening twenty-six feet wide and leaving the gasoline pumps, which are located toward the inside of the garage, in full view to persons who may be driving on Front street, although they have been slightly screened so as to partially hide them from the view of persons approaching the garage from Fourth street. The opening on Fourth street still remains as before. The facility of ingress and egress for the purpose of obtaining gasoline and oil remains as it was before the entry of the order of the court on October 18, 1933. Although the lights on the outside of the garage building have been removed, the lights inside of the corner and inside of the garage building are in themselves sufficient, so that any passer-by on either Front street or Fourth street may easily see that he can drive into this corner for the purpose of receiving gas and oil. That

exhibits "C" and "D," attached to the plaintiff's application for the order to show cause in this matter, give a very clear view as to the condition of the building when such photographs were taken and the condition of said premises as they were at the time of the hearing. That the defendant Northern Reo Company and Dan Polis have, to some extent, changed the appearance of the building, However, the entrance to the corner still remains practically the same. It is entirely open to the public from both Front street and Fourth street. Anyone passing on either Fourth or Front streets cannot fail to see that they are welcome to drive in and fill up with gasoline and oil.

We have gone carefully over this record and in our opinion the evidence fully sustains the trial court. After the service of the injunctional order, upon the defendant, he did make some changes in the appearance of his building, but he was still running a public filling station on the premises in violation of the injunction.

There is no merit in the claim that there is no evidence to sustain the findings of damages. The undisputed testimony shows that the costs and expenses in this proceeding in the district court were $250.

Under § 8190, Compiled Laws 1913, "If an actual loss or injury has been produced to any party by the misconduct alleged, the court or judge shall order a sufficient sum to be paid by the offender to such party to indemnify him and to satisfy his costs and expenses instead of imposing a fine upon the accused; and in such case the payment and acceptance of such sum shall be an absolute bar to any action by the aggrieved party to recover damages for such injury or loss. When no such actual injury or loss has been produced the fine shall not exceed two hundred fifty dollars over and above the costs and expenses of the proceeding. A corporation may be fined as prescribed in this section."

In the case of Red River Valley Brick Co. v. Grand Forks, 27 N. D. 431, 146 N. W. 876, relied upon by the appellant, the lower court found all of the defendants not guilty and there was no fine or judgment against the defendants in the lower court. On appeal this court reversed the lower court on the question of the guilt of two of the defendants, as their answers to interrogatories propounded showed that they were technically guilty of contempt. In that case it does not appear that there was any claim or any proof of damage and the court

said: "The evidence conclusively establishes the fact that the defendants were guilty of contempt, and the fact that they were acting in good faith, and that no damage had come to the plaintiffs, could in no manner alter the ultimate fact of their guilt. Provision is made for clemency on account of these extenuating circumstances. Section 7562, Revised Codes 1905 (Comp. Laws 1913, § 8190), provides that when no actual injury or loss has been produced, the fine shall not exceed $250 over and above the costs and expenses of the proceeding. This leaves the question of extenuating circumstances to be considered by the court after the defendant has been adjudged guilty, and the question of clemency should not be extended to an acquittal upon the charge. The finding of the trial court as to those two defendants is erroneous, and must be reversed.

"The question of punishment lies in the sound discretion of the trial court. If that court desires to extend leniency, the fine may be a mere nominal one. This fine must be in addition to the costs and expenses of the proceeding, which will be taxed by the clerk of court the same as any other civil action."

In that case there were no actual damages and the court held that the costs to be taxed were the same as the costs in any civil action and that in addition to the costs it was discretionary with the court to impose a fine which might be nominal but could not exceed $250.00. This decision is a construction of the latter part of § 8190, namely: "When no such actual injury or loss has been produced the fine shall not exceed two hundred fifty dollars over and above the costs and expenses of the proceeding." The case at bar does not come under this provision but comes squarely under the first provision of § 8190, namely: "If an actual loss or injury has been produced to any party by the misconduct alleged, the court or judge shall order a sufficient sum to be paid by the offender to such party to indemnify him and satisfy his costs and expenses instead of imposing a fine upon the accused."

In the case of Worden v. Searls, 121 U. S. 14, 30 L. ed. 853, 7 S. Ct. 814: "Two fines were imposed for violation of the preliminary injunction, one for $250 to be paid directly to the complainant and the other for $1,182, 'to be paid to the clerk of court, and by him to be paid over to the plaintiff for damages and costs.' The court, influenced

by the fact that these fines, while nominally for contempt, were really to reimburse the plaintiff for his expenses and damages incident to a violation of the injunction, treated the contempt as civil, and not criminal." See also Costilla Land & Invest. Co. v. Allen, 15 N. M. 528, 110 P. 847.

Section 8190, Compiled Laws 1913, includes expenses as well as costs. It specifically provides that "the court or judge shall order a sufficient sum to be paid by the offender to such party to indemnify him and satisfy his costs and expenses instead of imposing a fine upon the accused." In this case there was an injury and costs and expenses were incurred, as shown by the undisputed evidence. The order requiring the payment of such loss to the plaintiff to indemnify him and to satisfy his costs and expenses instead of imposing a fine upon the accused is clearly authorized by § 8190, Compiled Laws 1913.

In the case of Merchant v. Pielke, 9 N. D. 245, 83 N. W. 18, this court said: "Our Revised Codes (§ 5934) (Comp. Laws 1913, § 8180) define civil contempts as follows: 'Every court of record has power to punish by fine and imprisonment, or either, a neglect or violation of duty or other misconduct by which a right or remedy of a party to a civil action or proceeding pending in this court may be defeated, impaired, impeded or prejudiced in the following cases.' After stating a number of cases, it continues, in subdivision 3: 'Or for any other disobedience to any lawful order, judgment or process of the court.' The allegations in the petition for the order to show cause bring this case clearly within the definition of a civil contempt. It also comes clearly within the provisions of subdivision 8 of the same section, which reads: 'In any other case expressly authorized by the codes or statutes of this state, or where an attachment, or any other proceeding to punish for a contempt has been usually adopted and practiced in a court of record to enforce a civil remedy or to protect a right of a party to an action or proceeding in such court.' . . . Rap. Contempt, § 3, and cases cited. . . . The contempt charged is a civil contempt, and the plaintiff invokes the exercise of the power of the court for the purpose of enforcing a decree in his favor."

As stated in the case of Merchant v. Pielke, supra, "the contempt charged is a civil contempt, and the plaintiff invokes the exercise of the power of the court for the purpose of enforcing a decree in (its) favor."

It follows that the order adjudging the defendants guilty of contempt must be and is affirmed.

Thereafter, a second contempt order was issued, upon supporting affidavits, to have the defendant adjudged guilty of contempt for the alleged continued use of the premises as a filling station for a period from December 8, 1933, to and including December 29, 1933. The defendant, Northern Reo Company and its president, Dan Polis, entered a special appearance objecting to the jurisdiction of the court upon the ground that the appeal and stay bond in the former appeal stayed all the proceedings, which objection was overruled, and upon hearing the defendants, Northern Reo Company and Dan Polis, were held guilty of contempt and a fine of $100 was assessed against the defendant from which an appeal was taken.

Thereafter, a third order to show cause why the defendant and its president, Dan Polis, should not be held guilty of contempt covering the period from December 30, 1933, to January 9, 1934. On the appeal the same questions were involved. The facts as regards the garage and the changes that were made are the same in each case and the evidence fully sustains the findings of the trial court, that the defendant, Northern Reo Company and its president, Dan Polis, were operating a public filling station upon the premises leased from the Northern Pacific Railway Company in violation of an injunctional decree of this court. It is the contention of appellant that the appeal from the first order adjudging the defendant, the Northern Reo Company and its president, Dan Polis, guilty of contempt stayed all proceedings and the defendant could, after the perfection of his appeal and before the decision on appeal, use his building for any purpose without violating the injunction.

In the first case the defendants were charged with the violation of the injunction at a specific time and the perfected appeal stayed further proceedings in that particular case only, covering the particular time specified in the order. The violation of the injunction in the main case, subsequent to the first appeal, was not involved in that proceeding at all.

The contempt in the second proceeding covers a different time and the appeal in the first proceeding could not possibly apply to the second proceeding.

The third order adjudged the defendant guilty of contempt covering a specific time. It is not involved in the first nor the second order and therefore the appeal in the second order could not affect the third order. Each appeal stayed proceedings during the period for which the defendant was adjudged guilty of contempt only. To disobey the injunction in the main action at a time not involved in an appeal was just as much an offense as it was to violate the injunction in the first instance. The judgment in the last appeal was ordered paid to the sheriff and should, on payment to him, be paid to the school fund.

The orders adjudging defendants guilty of contempt are affirmed.

BURR, NUESSLE and CHRISTIANSON, JJ., concur.

MORRIS, J., did not participate.