**PACIFIC GAMBLE ROBINSON CO. v. MINNEAPOLIS & ST. LOUIS RY. CO. (JAECHE et al., Interveners).**

United States District Court
D. Minnesota, Fourth Division.
Aug. 10, 1950.

See, also, 85 F.Supp. 65.

Minneapolis, Minn., of counsel), for defendant in support of said motion.

Perry R. Moore, Minneapolis, Minn., (Stinchfield, Mackall, Crounse & Moore, Minneapolis, Minn., of counsel), for plaintiff in opposition thereto.

NORDBYE, Chief Judge.

This proceeding first came before this Court on April 16, 1949, upon plaintiff's motion for a temporary mandatory injunction requiring defendant, a common carrier by rail, to furnish railroad refrigerator cars to plaintiff company, which is engaged in the wholesale distribution and sale of perishable fresh fruits, vegetables and groceries in Minneapolis. An order granting that relief was filed by this Court on April 27, 1949, after an extended hearing, and a temporary mandatory injunction was issued. Pacific Gamble Robinson Co. v. M. & St. L. R. Co., D.C., 83 F.Supp. 860. The defendant appealed from that order, and on May 12, 1950, the Court of Appeals dismissed the appeal, Minneapolis & St. L. R. Co. v. Pacific Gamble Robinson Co., 8 Cir., 181 F.2d 812, upon the ground that the question presented on appeal—the propriety of the temporary mandatory injunction—was moot because defendant had begun to furnish the refrigerator cars required by plaintiff on or about June 20, 1949. At that time, the plaintiff's employees had ended their strike, which defendant contended prevented service to plaintiff, and defendant's employees again were willing to serve the plaintiff's plant as instructed by the defendant because, as they contended, they no longer felt concerned over their physical safety when doing so.

The trial of the main action, which seeks a permanent mandatory injunction, has been continued in this Court pending the decision of the Court of Appeals on the appeal from the granting of the temporary injunction. Plaintiff now admits that no permanent injunction is necessary in order for it to obtain from defendant the refrigerator cars which it now needs, and no other relief is requested in the complaint. Plaintiff objects to the dismissal, however, upon the ground that a

Richard Musenbrock, Minneapolis, Minn., (C. W. Wright and William J. Powell,

civil contempt proceeding, which it now has pending against defendant seeking a fine for its benefit in the sum of $205,118.64 by reason of damages sustained for alleged violation of the temporary injunction, has not been disposed of. Plaintiff alleges, and defendant apparently does not deny for the purpose of this motion, that defendant failed and refused to furnish refrigerator cars to plaintiff after this Court issued the temporary mandatory injunction and until the strike of plaintiff's employees ended. Plaintiff also opposes the dismissal upon the grounds that the action must remain existent so that plaintiff's costs can be granted and so that the Court can prevent future recurrances of defendant's refusal to furnish refrigerator car service as required by plaintiff.

The main question is, Should an action for a mandatory injunction be dismissed when it becomes moot if a civil contempt proceeding is pending against that defendant for violation of the temporary mandatory injunction before the action became moot?

■ The nature of a civil contempt proceeding must be recognized. It is a part of the main action, and if sound it may result in a fine for the benefit of the plaintiff as damages suffered as a result of the contempt. If, however, the main action is dismissed or is unsustainable, any civil contempt proceeding must fall. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A., N.S., 874; Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853. The vitality of a temporary injunction is derived from the pendency of the main action. It is ancillary thereto. And its ultimate and basic validity, as well as any contempt orders predicated thereon, necessarily depends upon the outcome of the main action. Obviously, if the entire controversy were not now moot and the trial on the merits disclosed that plaintiff was not entitled to a permanent injunction, then the temporary injunction would necessarily fall, together with any and all rights to enforce civil contempt for any disobedience. Circumstances have now arisen which prevent this Court from finally determining whether or not the temporary injunction was providently granted. A decision at this time on the merits would be a determination of an abstract question. The merits of the controversy between the parties has not and cannot be determined by reason of the happening of the events which have terminated the dispute which invoked the equitable jurisdiction of this Court. Such a termination divests the Court of any equitable grounds to proceed further, either to enforce any interlocutory orders or to enter a final decree. And without a final decree, a civil contempt order cannot have any finality. Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67.

■ It must be emphasized that the primary purpose of a civil contempt proceeding is to enforce obedience to the Court's order. Parker v. United States, 1 Cir., 153 F.2d 66, 163 A.L.R. 379. The purpose is remedial. In issuing a mandatory injunction, the Court in event of disobedience may place the violator in custody until he obeys the Court's order. But such disposition would not be by way of punishment, but rather as a means to enforce the Court's decree. Any assessment of a fine in a civil contempt proceeding against a defendant for a violation of the temporary mandatory injunction would likewise be imposed primarily as a remedial measure with incidental benefit to the plaintiff, in that the fine may be determined for his use in light of the injury to him. But, in the instant controversy, there is now no need for any proceeding in civil contempt to assess damages for plaintiff's benefit in order to coerce defendant to comply with the Court's order. "The remedy of an injunction is preventive and looks only to the future." Minneapolis & St. L. Ry. Co. v. Pacific Gamble Robinson Co., 8 Cir., 181 F.2d 812, 814. Certainly, where no remedial relief is necessary by reason of the termination of the controversy, the arm of a court of equity cannot be utilized in a civil contempt proceeding to punish past wrongs. Whether the contempt proceedings should be permitted to continue is not the question. Rather, the question is whether it exists so it can be continued.

The Gompers case is in point here. There, the court granted an injunction in which, like here, plaintiff subsequently claimed that defendant violated the order and instituted civil contempt proceedings. Like here, that injunctive order was appealed and the Supreme Court there found that the injunctive question presented on appeal was moot because plaintiff and defendant had settled their differences during the period of appeal. And like here, the appeal of the injunctive action was dismissed. Buck's Stove & Range Company v. American Federation of Labor, 219 U.S. 581, 31 S.Ct. 492, 55 L.Ed. 345. The plaintiff in the Gompers case pressed the contempt charges and that matter came before the Supreme Court for review, which, like here, found that the "only remedial relief possible was a fine, payable to the complainant." Gompers v. Bucks Stove & Range Co., 221 U. S. at page 451, 31 S.Ct. at page 502, 55 L. Ed. 797, 34 L.R.A., N.S., 874. The Supreme Court held unanimously that the civil contempt proceedings fell with the main action and consequently, at page 452 of 221 U.S., at page 502 of 31 S.Ct., remanded the contempt proceeding to the Appellate Court "with direction that the contempt proceedings instituted by the Bucks Stove & Range Company be dismissed, but without prejudice to the power and right of the Supreme Court of the District of Columbia to punish by a proper proceeding, contempt, if any, committed against it." A criminal contempt proceeding still was proper. The Court's holding, 221 U.S. on pages 451–452, 31 S.Ct. on page 502, is instructive and applicable here. It held,

" * * * When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled,—of course, without prejudice to the power and right of the court to punish for contempt by proper proceedings. * * * If this had been a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other, it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation.

"But, as we have shown, this was a proceeding in equity for civil contempt, where the only remedial relief possible was a fine payable to the complainant. * * * and when the main cause was terminated by a settlement of all differences between the parties, the complainant did not require and was not entitled to any compensation or relief of any other character. The present proceeding necessarily ended with the settlement of the main cause of which it is a part."

■ Although plaintiff points out that the Gompers case involved a settlement of the action and the instant case did not, that distinction does not appear important. The Supreme Court appears to have based its decision upon termination of the action, not upon the cause of termination. For it cites Worden v. Searls, supra, which did not involve termination of an action by settlement, but because the patent which the court there enjoined the defendant from violating was held to be a nullity. The fact of termination without need of further equitable relief, not the cause of termination, seems to be the basis for the Gompers decision. And certainly the instant case is terminated, in so far as injunctive relief is concerned, just as effectively as was the Gompers case. For here, as plaintiff also recognizes, a permanent injunction is not necessary. Defendant is doing that which plaintiff requests. No danger of defendant's failure to comply with the temporary injunction in the future is shown. The strike of plaintiff's employees which was the alleged reason for defendant's failure to serve plaintiff no longer exists. No need for either a temporary or permanent injunction appears. Defendant is now producing and furnishing the service which plaintiff in this action demanded and required. There is no fundamental distinction between the settlement of a controversy as in the Gompers case, a trial on the merits adverse to plaintiff as in Worden v. Searls, supra, or the mootness of the controversy between the parties hereto, which deprives a court of equity of any jurisdiction to proceed further in determining the question of injunctive relief.

Plaintiff contends that an injunction action is not moot and the action should not be dismissed when a defendant might revert to the conduct concerning which the injunction was issued. But actually that claim seeks to reargue the question already determined for this case by the Court of Appeals which has held that the instant case is moot. Plaintiff shows no danger of defendant's again refusing to furnish cars if the injunction is dismissed. Although the Court of Appeals' opinion related to the temporary injunction, it is obvious under the facts of this case that the temporary injunction would not be moot if the question to be presented as to a permanent injunction still existed. Plaintiff specifically recognizes that no need exists now for a permanent injunction. Such a concession contradicts its claim that the case is not moot because defendant might revert to its former wrongful conduct. The cases plaintiff cites in support of its position involve situations in which the danger complained of and for which the injunction was granted still existed. They were continuing fact situations and consequently continuing danger existed. Here, the strike of plaintiff's employees is ended. As soon as it ended and defendant's employees did enter the plaintiff's area, defendant as a common carrier began to serve plaintiff as plaintiff requested and to the extent sought herein. Defendant never has refused to serve plaintiff at any other time. To hold that this injunctive action should be permitted to stand in face of facts which convincingly contradict the need for the relief plaintiff seeks would be clear error. Indeed, there is nothing to show that defendant will revert to its refusal to serve plaintiff. If another strike arises and defendant again refuses to serve plaintiff, that is a separate occurrence giving rise to a new claim and must stand on its own particular facts.

Plaintiff cites Rivers v. Miller, 5 Cir., 1940, 112 F.2d 439. Although the language of that case may seem to give some support to plaintiff's position herein, it does not assume to contradict the teachings of the Gompers case to which it refers, and if any dictum therein seems to suggest any views contrary thereto, it is not persuasive precedent herein. The language in the Rivers case seems directly contra to the views of the First Circuit as found in Parker v. United States, supra.

Under all the circumstances, therefore, defendant is entitled to a dismissal of the main action including the civil contempt proceeding, without prejudice, however, to the Court's right to act on any criminal contempt which may have existed. There is no purpose in keeping the action alive for the determination of costs. The dismissal will be without prejudice to the right of either party to be heard on the question of the assessment of costs herein. Moreover, the dismissal will be without prejudice to plaintiff's right to proceed against the defendant in a court of competent jurisdiction for damages allegedly sustained by plaintiff as the result of defendant's failure to provide the switching service to plaintiff at the times and in the manner alleged herein. An appropriate order of dismissal may be submitted by defendant.

An exception is reserved to plaintiff.