# SUPREME COURT OF THE UNITED STATES

————

No. 24A1153

————

## DEPARTMENT OF HOMELAND SECURITY, ET AL. *v.* D. V. D., ET AL.

ON MOTION FOR CLARIFICATION

[July 3, 2025]

On April 18, 2025, the District Court for the District of Massachusetts preliminarily enjoined the Government from removing "any alien" to a "country not explicitly provided for on the alien's order of removal" without following certain procedures designed to enable the alien to seek relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Dec. 10, 1984, S. Treaty Doc. No. 100−20, 1465 U. N. T. S. 113. No. 25−cv−10676, ECF Doc. 64, pp. 46−47. The District Court later found that the Government had violated that injunction by failing to provide six class members a "meaningful opportunity" to assert CAT claims before such removal. ECF Doc. 118, p. 1. On May 21, the District Court issued an "order on remedy," directing the Government to follow specified procedures with respect to those individuals, tailored to the circumstances. ECF Doc. 119. The Government sought a stay of the April 18 injunction before our Court.

On June 23, we stayed the April 18 preliminary injunction pending disposition of any appeal and petition for writ of certiorari. Later that day, however, the District Court issued a minute order stating that the May 21 remedial order "remain[ed] in full force and effect," "notwithstanding" our stay of the preliminary injunction. ECF Doc. 176. The only authority it cited was the dissent from the stay order.

The Government has moved for "an order clarifying" our

stay.  Motion for Clarification.  It argues that the stay of the
April 18 preliminary injunction divests the May 21 reme-
dial order of enforceability.  Respondents argue that the
District Court correctly understood the May 21 order to re-
main in effect—despite our stay of the preliminary injunc-
tion it purported to enforce—because the May 21 order ef-
fectively operates as a remedy for civil contempt.

The motion for clarification is granted.  Our June 23 order
stayed the April 18 preliminary injunction in full.  The May
21 remedial order cannot now be used to enforce an injunc-
tion that our stay rendered unenforceable.  See *Nken* v.
*Holder*, 556 U. S. 418, 428 (2009) (explaining that a review-
ing court's stay order "divest[s]" the district court "order of
enforceability").  Even if we accepted respondents' charac-
terization of the May 21 order, such a remedy would serve
to "coerce" the Government into "compliance" and would be
unenforceable given our stay of the underlying injunction.
*United States* v. *Mine Workers*, 330 U. S. 258, 303 (1947);
see  *id.*, at 295 ("The right to remedial relief falls with an
injunction which events prove was erroneously issued and
*a fortiori* when the injunction or restraining order was be-
yond the jurisdiction of the court." (citations and footnote
omitted)).

Despite the dissent's provocative language, see *post*, at 6
(opinion of SOTOMAYOR, J.), a claim that a lower court has
failed to give effect to an order of this Court is properly ad-
dressed here.  *General Atomic Co.* v. *Felter*, 436 U. S. 493,
497 (1978) (*per curiam*) ("A litigant who . . . has obtained
judgment in this Court after a lengthy process of litigation,
involving several layers of courts, should not be required to
go through that entire process again to obtain execution of
the judgment of this Court."); see *United States* v. *Fossatt*,
21 How. 445, 446 (1859).  "Assuming as we do" that the Dis-
trict Court will now conform its order to our previous stay
and cease enforcing the April 18 injunction through the
May 21 remedial order, we have no occasion to reach the

Government's other requests for relief.  Cf. *Deen* v. *Hickman*, 358 U. S. 57, 58 (1958) (*per curiam*).  If the Government wishes to seek additional relief in aid of the execution of our mandate, it may do so through mandamus.  See *In re Sanford Fork & Tool Co.*, 160 U. S. 247, 255 (1895) (explaining that any matter "disposed of by" decree of this Court must be carried "into execution, according to the mandate," by the courts below).

# SUPREME COURT OF THE UNITED STATES

_____

No. 24A1153

_____

## DEPARTMENT OF HOMELAND SECURITY, ET AL. *v.* D. V. D., ET AL.

ON MOTION FOR CLARIFICATION

[July 3, 2025]

JUSTICE KAGAN, concurring.

I voted to deny the Government's previous stay application in this case, and I continue to believe that this Court should not have stayed the District Court's April 18 order enjoining the Government from deporting non-citizens to third countries without notice or a meaningful opportunity to be heard. See *DHS* v. *D. V. D.*, 606 U. S. \_\_\_, \_\_\_–\_\_\_ (2025) (SOTOMAYOR, J., dissenting) (slip op., at 9–18). But a majority of this Court saw things differently, and I do not see how a district court can compel compliance with an order that this Court has stayed. See *United States* v. *Mine Workers*, 330 U. S. 258, 294–295 (1947); *Worden* v. *Searls*, 121 U. S. 14, 24–26 (1887). Because continued enforcement of the District Court's May 21, 2025 order would do just that, I vote to grant the Government's motion for clarification.

# SUPREME COURT OF THE UNITED STATES

---

No. 24A1153

---

## DEPARTMENT OF HOMELAND SECURITY, ET AL. *v.* D. V. D., ET AL.

### ON MOTION FOR CLARIFICATION

[July 3, 2025]

JUSTICE SOTOMAYOR, with whom JUSTICE JACKSON joins, dissenting.

The United States may not deport noncitizens to a country where they are likely to be tortured or killed. International and domestic law guarantee that basic human right. In this case, the Government seeks to nullify it by deporting noncitizens to potentially dangerous countries without notice or the opportunity to assert a fear of torture. Because the Fifth Amendment, immigration law, federal regulations, and this Court's precedent unambiguously prohibit such no-notice deportations, see *DHS* v. *D. V. D.*, 606 U. S. \_\_\_, \_\_\_–\_\_\_ (2025) (SOTOMAYOR, J., dissenting) (slip op., at 15–18), a Federal District Court issued a classwide preliminary injunction barring the Government from removing noncitizens without notice and adequate process.

The Government appealed, and pending its appeal repeatedly violated the District Court's order. See *id.*, at \_\_\_– \_\_\_ (slip op., at 2–9). Meanwhile, the Government sought an emergency stay of the injunction from this Court. In its briefing, the Government took a kitchen-sink approach, arguing that the District Court lacked jurisdiction to grant classwide injunctive relief, that it also lacked jurisdiction over individual plaintiffs' claims under the Due Process Clause, and that the plaintiffs were not entitled to notice or a hearing before their removal. Without citing any of these arguments, or indeed providing any legal justification, this

Court granted the Government its requested stay.

Now, the Government returns for more. At issue in its latest filing is a month-old remedial order, which the District Court issued after the Government attempted illegally to deport eight class members to South Sudan. The remedial order required the Government to provide those noncitizens, whom it is currently holding in Djibouti, with the process to which the Constitution and federal law entitled them: adequate notice and an opportunity to be heard. No. 25–cv–10676 (D Mass., May 21, 2025) ECF Doc. 119. Following this Court's unreasoned stay of the original preliminary injunction, the District Court issued a minute order explaining that its remedial order (which the Government did not appeal, and whose validity this Court therefore did not consider) remained in effect. ECF Doc. 176. Rather than complying with the remedial order, the Government immediately returned to this Court, purporting to seek "clarification" of the stay.

What the Government wants to do, concretely, is send the eight noncitizens it illegally removed from the United States from Djibouti to South Sudan, where they will be turned over to the local authorities without regard for the likelihood that they will face torture or death. Because "'the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings," *Trump* v. *J. G. G.*, 604 U. S. ___, ___ (2025) (*per curiam*) (slip op., at 3), the Government's no-notice removals are undoubtedly illegal, see *D. V. D.*, 606 U. S., at ___–___ (slip op., at 15–18) (SOTOMAYOR, J., dissenting). In simple terms, the Government requests that the Court remove an obstacle to its achieving those unlawful ends. That obstacle, again, is the District Court's remedial order, which it issued to resolve the Government's violations of the preliminary injunction this Court later stayed. The Government now asks this Court to hold that the stay invalidated the remedial order.

In substance, of course, the Government's new request for

relief has nothing to do with clarification, so this Court has no business considering its merits now. The Court's Rules make plain where the Government should have pressed its argument about the nature and validity of the remedial order: before the lower courts. See this Court's Rule 23(3) ("Except in the most extraordinary circumstances, an application for a stay will not be entertained unless the relief requested was first sought in the appropriate court or courts below"); cf. *A. A. R. P.* v. *Trump*, 604 U. S. ___, ___ (2025) (ALITO, J., dissenting) (slip op., at 3) (emphasizing need to comply with Rule 23, and criticizing this Court for granting relief when it was "doubtful" that the applicants' request to the lower courts had been adequate). The Government undisputedly did not comply with that Rule.

Litigants may alternatively seek an "extraordinary writ," such as an injunction, even without complying with Rule 23. See this Court's Rule 20(1). Yet that relief is available only if it would "aid . . . the Court's appellate jurisdiction." *Ibid.* Far from maintaining our jurisdiction, vacating the District Court's remedial order risks doing the opposite: destroying jurisdiction over the noncitizens the Government intends to deport without notice or process. The Government thus plainly cannot satisfy Rule 20's requirements, either. Finally, even the majority does not believe that the Government is entitled to mandamus relief.

Although Members of today's majority have previously insisted that "this Court should follow established procedures" when granting emergency relief, *A. A. R. P.*, 604 U. S., at ____ (ALITO, J., dissenting) (slip op., at 5), the Court now ignores its Rules to grant the Government its desired "clarification" immediately. The majority suggests (relying on an argument the Government did not make) that a remedy for civil contempt is not enforceable when the

underlying injunction has been stayed.[1]  *Ante,* at 2.  Per-
haps that should be the rule, but the question appears to be
a matter of first impression in this Court.  In support of its
view, the majority cites a single line of dictum in *United
States* v. *Mine Workers,* 330 U. S. 258 (1947), which says
that the right to remedial relief for civil contempt "falls with
an injunction which events prove was erroneously issued."
*Id.,* at 295.  "Preliminary injunctions, however, do not con-
clusively resolve legal disputes," and neither do temporary
stay orders.  See *Lackey* v. *Stinnie,* 604 U. S. ___, ___ (2025)
(slip op., at 6).  Accordingly, this Court's stay certainly did
not "prove" that the District Court's injunction was "errone-
ously issued."  *Mine Workers,* 330 U. S., at 295.[2]

Given that the majority can muster no more than a sen-
tence of 80-year-old dictum in support of today's holding,
the District Court can hardly be faulted for reaching a con-
trary conclusion.  The District Court, moreover, had only
moments to decide the question, for (unlike this Court) it

————————

[1] To be clear, even the majority today does not dispute that "[v]iolations
of an order are punishable as criminal contempt even though the order
is set aside on appeal, . . . or though the basic action has become moot."
*United States* v. *Mine Workers,* 330 U. S. 258, 294 (1947) (citing *Worden*
v. *Searls,* 121 U. S. 14 (1887), and *Gompers* v. *Bucks Stove & Range Co.,*
221 U. S. 418 (1911)).  Civil contempt orders in turn "may . . . be em-
ployed for either or both of two purposes: to coerce the defendant into
compliance with the court's order, and to compensate the complainant
for losses sustained."  330 U. S., at 303–304.  The majority appears to
construe the District Court's order as serving the former purpose.  See
*ante,* at 2.

[2] After first adopting the Government's characterization of its request
as one for "clarification," see *ante,* at 1–2, the majority later appears to
justify its premature intervention by treating it as a request for manda-
mus relief, see *ante,* at 2 ("[A] claim that a lower court has failed to give
effect to an order of this Court is properly addressed here").  Even the
majority, however, does not believe that mandamus relief is warranted.
Its reliance on *General Atomic Co.* v. *Felter,* 436 U. S. 493 (1978) explains
why.  There, a District Court disobeyed a clear instruction "specifically
addressed" in this Court's opinion.  *Id.,* at 496.  Here, this Court did not
see fit to provide the District Court with any instructions.

realized that the lives and safety of eight noncitizens were at stake. Any suggestion that the District Court failed to carry "'into execution'" this Court's mandate (which said no more than that the Government's application was "granted") is patently inappropriate. Cf. *ante,* at 3. That the Government accuses the District Court, whose orders it has consistently ignored, of "unprecedented defiance," is more extraordinary still. Motion for Clarification 1. Even now, the Government seeks to defy this Court's clear holdings that it must afford noncitizens with due process of law before removing them.

In the end, the majority ignores the Court's Rules for seeking emergency relief and creates new law on civil contempt, all to allow the Government to circumvent the appellate process with respect to an order it continues to defy. In so doing, the Court focuses on dictum in *Mine Workers* at the cost of discarding that case's central message: "'An injunction duly issuing out of a court of general jurisdiction . . . and served upon persons made parties therein . . . must be obeyed by them however erroneous the action of the court may be.'" 330 U. S., at 293–294.

For all that, moreover, the majority does not actually clarify its prior decision. The majority says it expects "that the District Court will now conform its order to our previous stay," *ante,* at 2, but it refuses to explain what such conformity would involve. As a result, today's order not only excuses (once again) the Government's undisguised contempt for the Judiciary; it also leaves the District Court without any guidance about how this litigation should proceed. The District Court cannot adjudicate plaintiffs' serious due process claims on their merits without ensuring, by way of injunctive relief, its jurisdiction over the case. Yet this Court refuses to explain what injunctive relief, if any, it believes the District Court can issue.

Perhaps the majority hopes that, in light of its contentless stay order, the District Court will simply give up on

adjudicating this case.  But if this Court wishes to permit the Government to flout the fundamental rights guaranteed by the Due Process Clause, it cannot avoid accountability for that lawlessness by tasking the lower courts with inventing a rationale.  The Court's continued refusal to justify its extraordinary decisions in this case, even as it faults lower courts for failing properly to divine their import, is indefensible.

\*    \*    \*

"In a democracy, power implies responsibility.  The greater the power that defies law the less tolerant can this Court be of defiance.  As the Nation's ultimate judicial tribunal, this Court, beyond any other organ of society, is the trustee of law and charged with the duty of securing obedience to it."  *Mine Workers*, 330 U. S., at 312 (Frankfurter, J., concurring in judgment).  This Court continues to invert those principles.  Today's order clarifies only one thing: Other litigants must follow the rules, but the administration has the Supreme Court on speed dial.  Respectfully, I dissent.