Judy CHAPMAN, T. Dolores Butler, Leslie Ann Jassman, Plaintiffs,

Deborah Halvonik, Plaintiff-Appellant,

v.

PACIFIC TELEPHONE AND TELE-GRAPH CO., Defendant-Appellee.

No. 78–3745.

United States Court of Appeals, Ninth Circuit.

Nov. 7, 1979.

Rehearing Denied Feb. 12, 1980.

Ephraim Margolin, San Francisco, Cal., for plaintiffs.

Clement L. Glynn and Eric J. Swenson (argued), Asst. U.S. Atty., San Francisco, Cal., for defendant-appellee; William O. Dillingham, Noble K. Gregory, Eric J. Swenson, Asst. U.S. Atty., Clement L. Glynn, Pillsbury, Madison & Sutro-San Francisco, Cal., on brief.

Before WRIGHT and ANDERSON, Circuit Judges, and SOLOMON, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Deborah Halvonik was one of the attorneys for multiple plaintiffs in a Title VII action. During pretrial proceedings, she refused to comply with the order of the district court asserting that the order was confusing and invalid for unconstitutionality. The court found that the order was clear and definite.

The issue here is whether the district court may hold an attorney in criminal contempt for willfully refusing to comply with a clear and definite order, even though the attorney asserts that the order is unconstitutional and that she was confused. We hold that the court had that right and affirm the order holding the attorney in criminal contempt.

At a pre-trial conference on January 6, 1978, the district court orally ordered Mrs. Halvonik, lead counsel, to submit a written narrative statement of the direct testimony of each witness whom plaintiffs intended to call at the trial. The court observed that such statements would be helpful to the court in understanding the issues and would compel the parties to prepare adequately for trial. Appellant was given ten days to comply.

She made no attempt to prepare the statements. Instead, on January 16, she petitioned this court for a writ to prohibit the district court from enforcing the order. We denied the petition as premature.

On January 26, she attended another pretrial conference. The court inquired what progress had been made in preparing the witness statements. Mrs. Halvonik informed the court that nothing had been done. The court held her in contempt but withheld fixing punishment until after the conclusion of the Title VII trial.

When the court informed Mrs. Halvonik she was in contempt, she asked for and was granted a recess to consult with co-counsel. After the recess, Mrs. Halvonik said she did not intend to comply with the order because she was confused. The court found her confusion "self-induced and self-perpetuated."

On that day, the court reduced its order to writing. Mrs. Halvonik still did not make even a good faith attempt to prepare witness statements.

On January 30, the trial date, plaintiffs were unable to proceed because Mrs. Halvonik was not present and co-counsel were not prepared to examine their witnesses. The case was continued to February 6, when it was tried essentially without the aid of Mrs. Halvonik's witness statements. Despite this inauspicious beginning, two of the plaintiffs prevailed.

On June 9, 1978, the district court asked for post-trial briefs addressing the issues of awarding attorney's fees and certifying contempt. Mrs. Halvonik did not submit the requested materials.

On September 1, the court issued its final judgment, including an award of $3,624 for attorney's fees to Mrs. Halvonik. On that day, the court certified Mrs. Halvonik's criminal contempt for refusing to comply with the January 6 oral order. She was fined $500.

## ELEMENTS OF CONTEMPT

Mrs. Halvonik's non-compliance was found contumacious under 18 U.S.C. § 401(3) which provides:

*Of the District of Oregon.

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

■ Criminal contempt is established when:

(1) there is a clear and definite order, and the contemnor knows of the order, *In re Rubin*, 378 F.2d 104, 108 (3d Cir. 1967); and

(2) the contemnor willfully disobeys the order. *In re Allis*, 531 F.2d 1391, 1392 (9th Cir.), *cert. denied*, 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976).

## CLEAR AND DEFINITE ORDER

■ Mrs. Halvonik argues that the order was not clear and definite. She portrays

1. THE COURT: All right. Now, I come to the statements of the witnesses—of the lay witnesses for the plaintiffs, and I'd like to hear the status of that matter from counsel.

MRS. HALVONIK: As this Court knows, we filed a writ regarding the issue presented by this Court's order of January 6th, and it's our position that the plaintiffs are entitled to a public trial, that they are prevented from having their public trial, because the testimony in chief of their case must be in writing.

Secondly, that the plaintiffs are entitled to, by Rule 43, present in all trials on the merits, oral testimony in open court, and that this Court's rule or order of January 6th violates that rule. So, we do not have prepared testimony of the witnesses.

THE COURT: Did you get an order relieving you of the necessity of complying with this Court's order?

MRS. HALVONIK: We have been contacted twice recently by the Ninth Circuit.

THE COURT: Well, the question is, did you get an order?

MRS. HALVONIK: Their problem has been that there's been a delay in preparing the transcript. I was contacted just a few moments before this hearing took place, and they've just received the transcript, but they do not know whether a decision can come—

THE COURT: Is the answer no?

MRS. HALVONIK: The answer is no.

THE COURT: Well, you're in contempt of the Court's order, Mrs. Halvonik, and the Court will consider appropriate sanctions at the conclusion of the trial after a decision has been rendered.

the court's infinite patience, its repeated explanations of the order and its attempts to mollify Mrs. Halvonik as vacillation. We are at a loss to see what more the court could have done to clarify and define its order.

## WILLFUL DISOBEDIENCE

Mrs. Halvonik also argues that willfulness cannot be established because she was confused. The district court characterized her confusion as "self-induced and self-perpetuated," a finding amply supported by the record.

No recitation of particulars can adequately communicate the agonizing frustration the district court endured here. We recite in the margin only one example of Mrs. Halvonik's conduct but it alone would be sufficient to sustain the court's finding of willfulness.[1]

\* \* \* \* \* \*

I might say, that as I said at the very outset of the hearing, I'm taking all steps that I can and will continue to do so, so that the conduct of counsel will not prejudice the claim of the plaintiffs, and I intend to do everything I can to be sure that the plaintiffs will get the best shot at getting the relief the law entitled them to get despite the conduct of counsel in this matter.

So, there's nothing further to be said.

Is it your intention not to comply with any statements of the testimony of the witnesses other than the experts, as matters now stand?

MRS. HALVONIK: Your Honor, I have—

THE COURT: I'd like an answer to that. Yes or no?

MRS. HALVONIK: Could I ask a question; then answer your question?

THE COURT: That's not what I—that isn't what I had in mind. I asked a question. I'd like an answer to it. Are you able to answer the question?

MRS. HALVONIK: It is not our intent to substitute written testimony for oral argument.

THE COURT: Well, that's not an answer to the question. The question is, do you intend to comply with the Court's order insofar as it requires you to submit a written, narrative statement of the direct testimony of each witness you intend to present prior to trial? Do you intend to comply with that part of the order?

MRS. HALVONIK: To the extent that that's direct—written statement is a substitute for direct testimony, we intend to seek review of that order.

THE COURT: So, you don't—the answer is you don't intend to comply with the order of the Court.

MRS. HALVONIK: That's why I asked the Court if I could ask a question. I might ask this Court for—in view of the seriousness of holding me in contempt at this moment, if I could have a five-minute recess to consult with counsel?

THE COURT: Well, you've violated the order, and you're now taking the position that you continue to refuse to comply with the order, what choice do I have? Am I supposed to now say, well, if counsel feels that the order of the District Court is wrong, well, that's their right, and I guess there's nothing I can do about enforcing that order. If I took that position, soon we'd be living in a lawless society. Your clients wouldn't be any better off than anyone else. I'm duty bound to enforce the orders of the Court, and I intend to do so. I see no necessity at this point of having a recess. We can take one at the end of the hour.

MRS. HALVONIK: Then, there is one further matter that I want to be sure is brought to this Court's attention. That is, that we were not certain on January 6th that this Court ordered the testimony to be in affidavit form. Nowhere in the transcript does the word affidavit appear. We contacted your Clerk, Mr. Driscoll, and he informed us Tuesday or Wednesday of last week that it was to be in affidavit form. To the extent this Court feels that our presentation to the Ninth Circuit is not in keeping with what actually transpired, I would appreciate elucidation on that point.

THE COURT: Well, Mrs. Halvonik, I won't ask you whether you can read. I will ask you whether you've taken the trouble since you made these representations about what this Court did to the Ninth Circuit, whether you've taken the trouble to read the Reporter's transcript of what the Court did? The transcript of January 6th?

MRS. HALVONIK: I received the transcript a few hours ago and I looked at it, yes.

THE COURT: I think that answers the question. I went over it in great detail, but just to summarize it, again, and I'll refer you to, for example, Page 10, Pages 39 to 42, and Page 45. In summary, what is explained—I don't know why I should go through this again, but I will—also on Pages 50 to 51.

What the transcript says over and over again is that I expected to have both sides prepare in advance of trial a statement, and I said the word statement over again, in narrative form of the testimony of each witness, which they intend to offer. Not an affidavit, but a statement. Then, if the other side—opposing party wishes to cross-examine the witness on the statement he has to be at the trial. If not, he may be at the trial anyway, and the procedure for handling the statements will be that the witness takes the stand, and he says, first, he takes the oath, and then having been sworn, he

says, this is my testimony and I adopt it, and then, as I indicated to counsel quite clearly on a number of occasions, if counsel wishes to ask some further questions in order to bring out particular matters that counsel thinks are important, they will have the right to do so, but I want the statements to be complete and contain all of the testimony that is proposed to be offered, but I will permit counsel to cover some of the grounds again in question and answer form if there are particular areas where there may be questions of credibility or other particular problems. At no time did the Court order or suggest—just a minute. At no time did the Court ever order, direct or suggest that plaintiffs may not present their case orally by direct examination in open court. Never did the Court suggest, direct or ask that plaintiffs must present their entire case by written affidavit two weeks in advance of trial. Those statements are totally false and are a total misconception of what the transcript said, and I think that in view of the fact I went over it three or four, five times during the course of the conference on January 6th, counsel should have understood that that was so.

So, I've explained it adequately, now. I don't think I need to explain it another time, and that is the way I intended to proceed, and that's still the way I intend to proceed, and what steps I will take ultimately based on counsel's deliberate refusal to comply with this order, I will consider after the case has been decided.

Now, if you wish to advise me of what your position is or if you wish at this time to consult with co-counsel, I'll give you leave to do so.

MRS. HALVONIK: I appreciate that.

THE COURT: Do you have any questions, Mrs. Halvonik, that you would require clarification from the Court?

MRS. HALVONIK: Only the remaining question of whether we were misinformed as to whether this should have been in affidavit form, and I call to the Court's—

THE COURT: That's a false issue, Mrs. Halvonik. It hasn't anything to do with whether you should submit the statement or not. You didn't submit it in any form, affidavit or otherwise. I don't see what that has to do with it.

Neither side has been shy in getting in touch with the Court and asking for clarification from the Court. We've been doing that quite regularly for quite a while. If you felt uncertain on that point, the way to do that is to get in touch with the Court and ask for clarification.

I'll give you five minutes to consult with counsel. Perhaps you'd let me know what your positions are.

(Court in recess.)

(Continued proceedings.)

THE COURT: All right, Mrs. Halvonik.

Now, you've had a recess, ten minutes, and I will renew the question.

Do you intend to comply with the Court's order and submit, as I've stated before, narrative statements of the witnesses in advance of the trial? Yes or no?

## ETHICAL DUTY OF COUNSEL

■ Attorneys, as officers of the court, have a duty to cooperate with the court to preserve and promote the efficient operation of our system of justice.

The Code of Professional Responsibility, Disciplinary Rule 7–106(A) provides:

A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling.

The Code further exhorts the lawyer that:

Rules of evidence and procedure are designed to lead to just decisions and are part of the framework of the law. Thus while a lawyer may take steps in good faith and within the framework of the law to test the validity of rules, he is not justified in consciously violating such rules and he should be diligent in his efforts to guard against his unintentional violation of them.

Ethical Code 7–25. Mrs. Halvonik's conduct in this case far surpassed the bounds of a good faith testing of the district court's order.

We cannot believe Mrs. Halvonik was ignorant of her ethical duties. Her counsel seeks to excuse her conduct, arguing that she is "young and inexperienced." She is 37 years old. At oral argument, her counsel estimated she had practiced law for six years. She is sufficiently mature and experienced to understand her obligation to comply with a court order. If she is not, she lacks the basic competence to practice law.

## VALIDITY OF THE ORDER

■ Mrs. Halvonik argues she was privileged to disobey the court's order because it was invalid. An attorney who believes a court order is erroneous is not relieved of the duty to obey it. The proper course of action, unless and until the order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result. *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

■ Mrs. Halvonik attempts to avoid the *Maness* rule by insisting that the court's order was unconstitutional.[2] We disagree. We believe the district court acted properly, in a laudable effort to save trial time and to assure adequate representation by counsel.

The procedure employed by the court in this case was not "trial by affidavit" as appellant insists. *See Locklin v. Switzer Brothers, Inc.*, 348 F.2d 244 (9th Cir. 1965). Indeed, it was commendable. Direct oral testimony was to be permitted to supplement the written narrative statement "where there may be questions of credibility or other particular problems." Oral cross-examination and oral redirect were also contemplated.

Submission of direct testimony in written form is expressly provided for by the court rules of other districts and has been em-

---

MRS. HALVONIK: The answer is no, because—

THE COURT: All right.

MRS. HALVONIK: Your Honor, I wish to state this for the record—

THE COURT: You can state the reasons if you wish. . . .

MRS. HALVONIK: Your Honor, for the record, the reason I have said, no, is that we still do not understand what the Court is ordering by way of testimony. Either the testimony is written testimony or it is not written testimony, and for the elucidation the Court has attempted to give us, we still do not understand what the Court wants.

2. Appellant contends *Maness* creates an exception to the general rule: an unconstitutional order need not be obeyed. In *Maness*, the contemnor was an attorney who advised his client to assert Fifth Amendment rights against self-incrimination by retaining material the trial court ordered him to produce. 419 U.S. 449, 458–61, 95 S.Ct. 584, 42 L.Ed.2d 574 (1974). We note that the "exception" to the general rule derives not from the unconstitutionality of the order but from the exercise of a specific constitutional right not to cooperate with the judicial process. We need not rest our opinion on this reading of *Maness*, however, because we find the district court's order in this case constitutional.

ployed productively by other trial courts.[3] We should think that Mrs. Halvonik would have welcomed, rather than resisted the court's plan to clarify and simplify the issues at trial.

### ADEQUACY OF CONTEMPT PROCEDURE

■ The district court purported to hold Mrs. Halvonik summarily in contempt under Rule 42(a). She argues that summary disposition was inappropriate. We need not decide this issue because the procedure employed complied with the notice and hearing requirements of Rule 42(b).

This court, in *In Re Allis*, 531 F.2d 1391 (9th Cir. 1976), *cert. den.*, 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976), held that Rule 42(b) is satisfied if a "reasonable time for the preparation of the defense" is provided. Allis, an attorney, made a tardy appearance before the court. The court told him there was imminent likelihood he would be held in contempt. After a ten-minute recess, during which Allis conferred with counsel, the court asked whether he could excuse his conduct. Allis offered no excuse and was held in contempt. This court affirmed the contempt citation though the trial court purported to act summarily under Rule 42(a).

The present case is similar to *Allis* except that Mrs. Halvonik was never at a loss for excuses. This is not a compelling distinction. We find *Allis* controlling.

The contempt order is affirmed.

---

**3.** *See, e. g.,* Local Rules, United States District Court for the District of Oregon, Rule 20(a) and

Solomon, J., *Techniques for Shortening Trials,* 65 F.R.D. 485, 489–90 (1974).