**In the Matter of Peter C. RILEY.**

**Misc. No. 82–8.**

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

July 8, 1982.

Tom Riley, Cedar Rapids, Iowa, for Peter C. Riley.

## ORDER AND JUDGMENT

McMANUS, Chief Judge.

This matter is before the court on its show cause order filed May 27, 1982 why Peter C. Riley[1] should not be cited for contempt for his failure to appear at the sentencing of his client Dennis J. Whitsell on Tuesday, May 25, 1982 and Thursday, May 27, 1982 and for advising his client not to appear for the sentencing on Thursday, May 27, 1982.

At the outset it is important to clarify the issues involved in this proceeding. Despite efforts by the press and Mr. Riley to frame the issues in terms of a confrontation between the state and federal courts' scheduling priorities, this simply is not the issue. In this regard it should be noted that on the relatively rare occasions when scheduling conflicts have arisen this court has always accommodated the state's courts or has always been reciprocally accommodated by the State Judges. As will be discussed later it is unfortunate that Mr. Riley acted in a fashion which effectively prevented the operation of this spirit of comity. While it may not make as interesting reading, what is really involved here is the scope of an attorney's obligations to his clients and the courts involved when he learns of a scheduling conflict. Stated another way, the question is whether an attorney who finds himself scheduled to appear in two courts simultaneously has an obligation to attempt to accommodate both courts or may simply choose to appear in the court which best fits his desires and by his absence compels a continuance of the other proceeding.

With this introduction the court makes the following findings of fact: On March 3, 1982 a grand jury returned a three count indictment against Dennis J. Whitsell charging him with violations of 26 U.S.C. § 7206(1). Mr. Riley was retained by Mr. Whitsell a short time thereafter. Mr. Whitsell was arraigned on March 17, 1982, entered a plea of not guilty to all counts and trial was set for April 19, 1982.

Shortly before trial R. Fred Dumbaugh, an experienced criminal trial lawyer was also retained to represent Mr. Whitsell. On April 21, 1982, the morning of trial, Whitsell appeared with both counsel and entered guilty pleas to two of the three charges in the indictment. Sentencing was postponed pending receipt of a presentence report and Whitsell and counsel were advised by the court that it would take approximately two weeks to prepare the presentence report and that sentencing would then be set on "a couple of days notice." Neither counsel nor Mr. Whitsell objected to this procedure nor advised the court of any scheduling conflicts.

The presentence report was received by the court on Friday, May 21, 1982 and Mr. Riley was notified by the probation office the same day of its availability for inspection. On Monday, May 24, 1982 this court ordered Mr. Whitsell's sentencing set for 12:30 p. m., on Tuesday, May 25, 1982. Mr. Riley's office was telephoned by the Clerk's office at 9:39 a. m. on the 24th and a message left with his secretary as to the

1. In order to avoid confusion Peter C. Riley will be referred to as Mr. Riley throughout the remainder of this order.

date and time of the sentencing and that Mr. Riley should notify Mr. Whitsell. His secretary in turn placed a note on Mr. Riley's desk conveying this information.

Unknown to this court on May 24, 1982 at 9:00 a. m. Mr. Riley began a civil jury trial in state court in Cedar Rapids, Iowa. As a result of this trial Mr. Riley did not return to his office until after 5:00 p. m. that day and although he went through his messages he failed to see the note setting the sentencing. Accordingly, no one appeared for the sentencing on Tuesday, May 25, 1982 at 12:30 p. m. and a warrant was issued for Mr. Whitsell's arrest. The warrant was however quashed and the sentencing reset for 9:00 a. m. on Thursday, May 27, 1982 when it was learned that neither counsel nor Mr. Whitsell had received notice of the sentencing.

Mr. Riley received oral notice of the rescheduled sentencing and of the problems which had occurred that day including the issuance of the warrant when he returned to his office on Tuesday afternoon at 5:00 p. m. Written notices were also mailed by the Clerk's office on Tuesday and received by Mr. Riley, Mr. Dumbaugh and Mr. Whitsell on Wednesday, May 26, 1982.

Upon learning of the problems Mr. Riley made no attempt to personally contact this court, his client, or to file a written motion for continuance. Likewise, although he was aware that at most the sentencing would take only one-half hour he made no attempt to obtain a short recess in the state court in order that the sentencing in this court could be concluded or for that matter even to advise the State Judge of a potential conflict. In this regard the court would note the two courthouses involved are less than a five minute walk apart, being a block and one half from each other in Cedar Rapids, Iowa.

Instead of attempting to contact either court with his problem Mr. Riley asked his father and senior member of his firm, Tom Riley, (who was not an attorney of record in the case) to request that the sentencing be continued. Unfortunately for all concerned Tom Riley apparently attached little impor-

tance to this request and made no attempt to contact the court until after 4:30 p. m. on Wednesday. Like Mr. Riley, Tom Riley made no attempt to contact Mr. Whitsell.

Sometime after 4:30 p. m. on Wednesday, Tom Riley contacted the Clerk's office and a member of the court's staff who advised him that they were without authority to continue the matter and that Mr. Whitsell should appear the next morning with counsel. Although he was present in Tom Riley's office during the last part of this phone conversation with a member of the court's staff Mr. Riley made no effort to become directly involved in working out the scheduling problems.

On Thursday morning at 7:30 a. m. Mr. Riley was contacted by Mr. Whitsell regarding the sentencing and advised Mr. Whitsell not to appear because the matter would be continued. Mr. Riley gave this advice despite his knowledge that the matter had not been continued and in the belief that either the order was invalid or that a continuance would be secured.

At the time set for sentencing on Thursday, May 27, 1982 at 9:00 a. m. only Tom Riley and R. Fred Dumbaugh appeared and Tom Riley requested a continuance of the sentencing which was denied. Because Whitsell refused to proceed with only Mr. Dumbaugh ultimately a recess was obtained in the state proceeding and Mr. Riley appeared in this court and the sentencing completed about noon.

 Since this is a criminal contempt proceeding the burden is upon the government to prove the elements of the contempt beyond a reasonable doubt. *James v. United States*, 275 F.2d 332 (8th Cir. 1960). Simply stated contempt involves a willful disregard or disobedience of the court's authority. *See e.g., In Re Allis*, 531 F.2d 1391 (8th Cir. 1976); *United States v. Delahanty*, 488 F.2d 396 (6th Cir. 1973); *Sykes v. United States*, 444 F.2d 928 (D.C.Cir.1971). Criminal contempt is established when there is a clear and definite order of court, the contemnor knows of the order, and the contemnor willfully disobeys the order. *See*

*e.g., United States v. Powers*, 629 F.2d 619 (9th Cir. 1980); *Chapman v. Pacific Telephone and Telegraph Company*, 613 F.2d 193 (9th Cir. 1979). Generally, willfulness may be inferred from a reckless disregard for a court's order. *United States v. Delahanty*, 488 F.2d 396 (6th Cir. 1973); *Sykes v. United States*, 444 F.2d 928 (D.C.Cir. 1971). Stated another way the contemnor must be shown to have committed a " 'volitional act done by one who knows or should reasonably be aware that his conduct is wrongful' ". *United States v. Greyhound Corporation*, 508 F.2d 529 (7th Cir. 1974). In *Sykes v. United States*, 444 F.2d 928 at 930 the Circuit Court for the District of Columbia stated:

> An essential element of (criminal contempt) is an intent, either specific or general, to commit it. (citations omitted). By definition, contempt is a 'wilful disregard or disobedience of a public authority.' (citations omitted). The requisite intent may be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty.

■ Attorneys, as officers of the court, have a duty to cooperate with the court to preserve and promote the efficient operation of our system of justice. *Chapman v. Pacific Telephone and Telegraph Company*, 613 F.2d 193 (9th Cir. 1979). If anything, this duty is heightened when more than one court is involved since our dual system of justice can only work efficiently through mutual respect and cooperation. Hence, when an attorney finds himself scheduled to be in two courts at the same time it is incumbent that he *immediately* advise *both* courts and make some effort to meet both commitments. It is only through the actions of counsel who is privy to all the facts that the procedures necessary to the operation of this spirit of mutual cooperation can be set in motion. In the instant case there can be little doubt that had Mr. Riley contacted both courts that both matters could have been easily accommodated on May 27, 1982. This court has always accommodated state settings wherever possible and would have been willing to reschedule the sentencing before the state case commenced for the

day or during a recess in those proceedings. Likewise, it is difficult for this court to believe that the State Judge would not have extended one of its recesses to accommodate the sentencing in this court. Mr. Riley's actions in failing to make any efforts to advise the State Judge of the conflict and to accommodate both proceedings deprived both courts of the opportunity to operate efficiently through cooperation.

■ It is equally clear that an attorney has no right to disregard an order merely because he feels that it is invalid. Code of Professional Responsibility Disciplinary Rule 7–106(A); Ethical Consideration 7–22. *Chapman v. Pacific Telephone and Telegraph Company*, 613 F.2d 193 (8th Cir. 1982).

The general rules regarding compliance with court orders were set out in *Maness v. Meyers*, 419 U.S. 449 at 458–460, 95 S.Ct. 584 at 590–592, 42 L.Ed.2d 574 (1974).

We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. *Howat v. Kansas*, 258 U.S. 181, 189–190 [42 S.Ct. 277, 280–281, 66 L.Ed. 550] (1922); *Worden v. Searls*, 121 U.S. 14 [7 S.Ct. 814, 30 L.Ed. 853] (1887). The orderly and expeditious administration of justice by the courts requires that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. Mine Workers*, 330 U.S. 258, 293 [67 S.Ct. 677, 696, 91 L.Ed. 884] (1947). This principle is especially applicable to orders issued during trial. *E.g., Illinois v. Allen*, 397 U.S. 337 [90 S.Ct. 1057, 25 L.Ed.2d 353] (1970). Such orders must be complied

with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling. An objection alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling. *United States v. La Franca*, 282 U.S. 568, 570 [51 S.Ct. 278, 279, 75 L.Ed. 551] (1931). But, once the court has' ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders. While claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply. A lawyer who counsels his client not to comply with a court order during trial, would, first, subject his client to contempt, and in addition, if he persisted the lawyer would be exposed to sanctions for obstructing the trial. Remedies for judicial error may be cumbersome but the injury flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice. (Footnote omitted).

Nor does the fact that Mr. Riley apparently felt the order was unconstitutional afford him any relief under *Maness. Maness* held an attorney could not be cited for contempt for advising his client to assert Fifth Amendment rights against self-incrimination by retaining material the trial court ordered him to produce. That case however dealt with a testimonial privilege deriving from a constitutional right not to cooperate with the judicial process. Here, Mr. Riley's argument is that sentencing was set on such short notice that it had the effect of depriving his client of the adequate assistance of counsel. This claim unlike the self-incrimination claim could have been adequately raised on sentencing and if necessary an appeal.

Neither is the court impressed by the argument that the order setting sentencing amounted to an injunction of the state court proceeding. It was not this court's act in setting the sentencing which was disruptive of the state proceeding but rather Mr. Riley's failure to seek to proceed in a reasonable manner in seeking an accommodation of the conflicting settings which caused the disruption of both proceedings.

■ Turning more directly to the facts in this case the court is of the view that Mr. Riley's actions in not appearing for the first setting on May 25, 1982 were not contemptuous since he had no knowledge of the order. His action, however, in not appearing on May 27 and advising his client not to appear was at best taken in reckless disregard of the court's order and at worst an intentional act. Indeed, Mr. Riley's failure to contact his client or the state court and delegating the seeking of a continuance to another represent a singular lack of concern or consideration for anyone other than himself.

In this regard it should be noted that while part of the directions to Mr. Riley were to notify his client of the sentencing, neither he nor anyone else made any attempt to do so. Rather it was Mr. Whitsell who initiated the contact with Mr. Riley after receiving written notice from the court. This and the advice not to appear take on added significance in light of the events of Tuesday, May 25, 1982. A warrant had actually been issued for Mr. Whitsell's arrest for not appearing and Mr. Riley was aware of this. With this background Mr. Riley's failure to make any effort to notify Mr. Whitsell and instructing him not to appear when he knew no continuance had been granted were totally unreasonable and had the potential of subjecting Mr. Whitsell to arrest. In addition, Mr. Riley failed even to consult Mr. Whitsell as to whether he desired a continuance.

Likewise, the fact that Mr. Riley took no direct hand in attempting to seek a continuance is evidence of his willful disregard of the court's order. The record is undisputed that Mr. Riley was present during at least

part of Tom Riley's call to the court yet he made no effort to become personally involved or to ascertain the actual facts for himself. Nor did he attempt in any way to review the presentence report, though he had ample opportunity, so that he would be prepared if no continuance were granted.

■ Under these facts the court has no choice but to find Mr. Riley in contempt for his failure to appear and advising his client not to appear.

As to sentence, however, the court feels that mitigating circumstances exist which make a reprimand the most appropriate sanction in this case. Initially, the court would note that Mr. Riley is a young and inexperienced attorney. This was his first criminal action in this court and the state case was apparently his first civil jury trial.

More importantly it appears that many, if not all of the problems here resulted from Mr. Riley's reliance upon his father Tom to secure a continuance and Tom Riley's failure to do so in an expeditious and professional manner. Had Tom Riley promptly sought a continuance instead of waiting until 4:30 p. m. on the day before the hearing in all likelihood this proceeding would have been unnecessary.

Specifically, Tom Riley had ample opportunities after 10:00 a. m. on May 26, 1982 to contact this court to secure a rescheduling of the proceedings. Further, the court finds it incredible that an attorney of his experience would take this matter so lightly after a warrant had already been issued for the client's arrest on one occasion and that he would not have made clear to his son that the client should in any event be present. Tom Riley should have realized that a criminal sentencing which involves a man's liberty is not to be taken lightly whether it be in State or Federal Court and should have imparted this to his son.

The court can only infer that Mr. Riley's self-centered and professionally irresponsible actions reflect the type of training and guidance given by the senior member of his firm.

Accordingly,

It is

ORDERED

1. Peter C. Riley is not in contempt for failure to appear for sentencing on May 25, 1982.

2. Peter C. Riley is adjudged in contempt and reprimanded for his failure to appear for sentencing in Criminal No. CR 82–4, *United States v. Dennis J. Whitsell*, on May 27, 1982 and his advising Mr. Whitsell not to appear for sentencing on May 27, 1982.