**Michael L. KEHM, Administrator of the Estate of Patricia Ann Kehm, Deceased, and as Father and Next Friend of Kathryn Kehm and Andrea Kehm, Plaintiff,**

v.

**The PROCTER & GAMBLE MANUFACTURING COMPANY, the Procter & Gamble Distributing Company, the Procter & Gamble Paper Products Company and the Procter & Gamble Company, Defendants.**

No. C 80–119.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

June 28, 1983.

Tom Riley, Peter C. Riley, T. Todd Becker, Cedar Rapids, Iowa, for plaintiffs.

John W. Allured, San Francisco, Cal., Mark B. Hutton, Wichita, Kan., James D. Todd, Jackson, Tenn., James B. Brien, Mayfield, Ky., for amicus curiae parties.

Timothy S. White, Steven K. Warbasse, J. Richard Johnson, Cedar Rapids, Iowa, Thomas S. Calder, Frank C. Woodside, III, Cincinnati, Ohio, for defendants.

Michael A. Guidicessi, Des Moines, Iowa, for Des M. Register, etc.

Lawrence Blades, Richard G. Hileman, Jr., Cedar Rapids, Iowa, for KCRG.

Michael McDermott, Allan W. Vestal, Cedar Rapids, Iowa, for KGAN.

John C. Monroe, Cedar Rapids, Iowa, for Judge McManus on Mandamus action in Appeals Court.

### FINDINGS OF FACT
### CONCLUSIONS OF
### LAW AND ORDER

McMANUS, Chief Judge.

This matter is before the court on defendants' motion for an order directing plaintiff's counsel to show cause why he should not be cited for contempt for violating a protective order [1] entered by the

---

1. Specifically, Tom Riley, plaintiff's attorney, is alleged to have distributed confidential documents listed in the final pretrial order and not admitted at trial identified as plaintiff's Exhibits 22, 27, 170, 171, 172, 173, 193, 194 and 195 to plaintiff's counsel in other toxic shock syn-

court on August 12, 1981. Hearing on the motion was held and the parties have submitted their briefs and arguments. Also considered at this time will be motions filed by representatives of the media to release transcripts of those portions of the show cause hearing ordered closed by the court.

Based upon the evidence presented at the hearing and the briefs and arguments of counsel the court makes the following:

## Findings of Fact

1. This action for the wrongful death of a spouse and mother resulting from toxic shock syndrome (TSS) from using Rely tampons manufactured by defendants was filed September 30, 1980. At all times material Tom Riley was attorney for plaintiff.

2. During pre-trial discovery plaintiff and defendants agreed to and on August 12, 1981 the court entered a protective order designed to limit disclosure of defendants' trade secrets and other confidential business information made available to plaintiff through discovery. The order was advantageous to plaintiff and necessary to expedite discovery in light of the large number of documents involved and impracticality of an in camera review to segregate confidential documents at that time. At the same time the protective order was signed, Riley and his employees, Michelle Askren, LuAnne Gallery and Sara Riley signed a non-disclosure agreement limiting the examination and disclosure of documents designated by defendants as confidential.

3. A jury returned a verdict in favor of plaintiff for $300,000.00 and judgment was entered on April 21, 1983. This judgment is presently on appeal.

4. Among documents covered by the protective order were plaintiff's Exhibits 22, 27, 170, 171, 172, 173, 193, 194 and 195. Exhibits 22 and 27 relate generally to the proposed distribution schedules for Rely K and Rely J tampons, Exhibits 170, 171, 172 and 173 are consumer complaints relating to Rely and Exhibits 193, 194 and 195 are memoranda of contacts with physicians regarding treatment of TSS cases.

5. Shortly after judgment Riley began soliciting orders from plaintiffs' lawyers in other TSS cases and sold them packets containing a transcript of the trial and all briefs, defendants' answers to interrogatories and exhibits marked by plaintiff in the final pre-trial conference order, including all exhibits covered by the protective order. Initially the briefs, answers to interrogatories, and all exhibits were assembled by his employees and sold in one package with the trial transcript in a second package. The original price was $2,000.00 for both packages but was later reduced to $450.00 for the first package and $750.00 for the transcript. The proceeds from the sale of both packages amounting to $67,618.10 have been used for plaintiff's benefit to reduce the cost of this litigation.

6. Although Riley's sale and distribution of covered documents under the circumstances was not wilful, he should have realized that some of the exhibits were under the protective order, and should have sought leave of court for their release and distribution.

7. Although Exhibits 22 and 27 have not been disclosed to defendants' competitors and Rely tampons were taken off the market September 21, 1980, disclosure of said exhibits would cause substantial harm to defendants' competitive position by revealing elements of defendants' marketing strategy in the catamenial products area where defendants are currently marketing products under the trademark ALWAYS.[2]

8. Defendants have developed and do maintain procedures to limit and control the dissemination of information of the

drome litigation. Defendants' claim as to confidentiality of other documents covered by the protective order and admitted into evidence at trial was disposed of in the court's order filed February 25, 1983. The issue of contempt remains as to all documents.

2. Because of the nature of the information the court will not go into detail as to the contents of these documents but will state that it accepts the uncontradicted testimony of Martin Cannon and Daniel Mcade received at the hearing.

type contained in Exhibits 22 and 27. Specifically, the information is made known on a need-to-know basis only and extensive precautions are taken to keep such information from competitors.

9. Exhibits 170, 171, 172, 173, 193, 194 and 195 contain no information which would place defendants at a competitive disadvantage.

10. Defendants prosecuted this motion in good faith in order to enforce the protective order.

11. Defendants' reasonable attorneys' fees and expenses in pursuing this contempt proceeding are $10,000.00.

## Conclusions of Law

■ 1. Riley's sale and distribution of documents covered by the order of August 12, 1981 without first obtaining leave of court is civil contempt. FRCP 37; *see e.g., Burke v. Guiney,* 700 F.2d 767 (1st Cir. 1983); *Erhardt v. Prudential Group Inc.,* 629 F.2d 843 (2nd Cir.1980); *McGoff v. Rapone,* 78 F.R.D. 8 (E.D.Pa.1978).

■ 2. Lack of confidentiality of covered documents is no defense.[3]

■ 3. Since the purpose of a civil contempt is remedial a showing of intent or wilfulness is not required. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *McGoff v. Rapone,* 78 F.R.D. 8 (E.D.Pa.1978).

4. Only Exhibits 22 and 27 are trade secrets or confidential business documents. Restatement, Torts, section 757, comment b, pp. 5–6; *Basic Chemicals, Inc. v. Benson,* 251 N.W.2d 220 (Iowa 1977). *See generally* Anno., *What Constitutes "Trade Secrets and Commercial or Financial Information Obtained from a Person and Privileged or Confidential," Exempt from Disclosure under Freedom of Information Act,* 21 ALR Fed. 224 Section 6 (1974).

■ 5. Though defendants failed to establish actual damages from the sale and distribution they have clearly established the potential for damage if the documents fall into the hands of competitors and are entitled to attorney's fees and costs in the sum of $10,000.00 FRCP 37; *Burke v. Guiney,* 700 F.2d 767 (1st Cir.1983).

■ 6. Potential harm to defendants outweighs the media's interest in open proceedings under the circumstances of this case.[4]

**3.** Riley seeks to justify his actions, by attacking the validity of the protective order, asserting that since the documents distributed contain no confidential information they were improperly designated as such under the protective order, or by admission at trial their confidentiality has been destroyed.

It is generally recognized that attorneys, as officers of the court, have a duty to cooperate with the court to preserve and promote the efficient operation of our system of justice. *Chapman v. Pacific Telephone and Telegraph Company,* 613 F.2d 193 (9th Cir.1979). Consequently the general rule is that an attorney has no right to forego appeal and disregard an order merely because he feels it is invalid and then attack its validity in a contempt proceeding. *Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1974); *Chapman v. Pacific Telephone and Telegraph Company,* 613 F.2d 193 (8th Cir.1982). An exception to this rule has, however, been recognized in the area of civil contempts relating to discovery orders. *See e.g. United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Hastings v. North East Independent School Dist.,* 615 F.2d 628 (5th Cir.1980). The rationale for this exception

seems to be the general unappealability of these orders. *Marrese v. American Academy of Orthopaedic Surgeons,* 692 F.2d 1083 (7th Cir.1983).

Several policy considerations militate against application of this exception. First, allowing documents to be distributed before a determination of confidentiality has been made would defeat the purpose of the protective order entered. Further, here procedures for review of the protective order were readily available. First, Riley could have sought modification from this court which was the procedure apparently contemplated by the parties when the consent order was entered. Alternatively, since final judgment had been entered prior to the violation, Riley could have appealed directly to the Eighth Circuit. Under these circumstances the court is unwilling to allow the order to be attacked collaterally now. As will be discussed below the nature of the documents must, however, be considered in regard to the damages aspect of the contempt citation.

**4.** An important purpose of a pre-trial protective order is to preserve the confidentiality of materials which are revealed in discovery but not made public at trial. Since pre-trial discovery

It is therefore

ORDERED

1. Tom Riley is in civil contempt of this court's order of August 12, 1981, and shall pay defendants $10,000.00 in attorneys' fees and costs.

2. By not later than August 1, 1983 Tom Riley shall notify defendants in writing that all copies of Exhibits 22 and 27 have either been returned to him or that he has obtained an agreement to be bound by the protective order from all recipients not returning the documents.

3. Exhibits 170–173, and 193–195 are released from the protective order.

4. Motion for transcripts denied as to all testimony relating to Exhibits 22 and 27; granted as to those portions of the transcript relating to exhibits released above from the protective order.

5. Paragraphs 3 and 4 of this order are stayed until and including Tuesday, July 12, 1983 for defendants to seek review in the pending mandamus action.

requires disclosure of materials which may be neither relevant nor admissible at trial if they may lead to the discovery of relevant evidence the ability to preserve the confidentiality of such material is extremely important to orderly operation of discovery. *Cf. In Re San Juan Star Co.,* 662 F.2d 108 (1st Cir.1981); *National Polymer Products v. Borg Warner Corp.,* 641 F.2d 418 (6th Cir.1981). Indeed, in light of these considerations the court in the *San Juan Star* case held:

> We do not see present in the case of civil discovery those interests that make publicity in a criminal trial an important "safeguard against any attempt to employ our courts as instruments of persecution," ....
>
> We conclude, therefore, that although there is a First Amendment interest in information produced at the trial that warrants full protection, a judicially-powered process compelling information that has not yet passed through the adversary-judicial filter for testing admissibility does not create communications that deserve full protection.

*In Re San Juan Star Co., supra* 662 F.2d at 115.

Here defendants have clearly established the confidential nature of the documents and sufficient harm which would result from general publication to warrant closure of trial. *See e.g. Stamicarbon, N.V. v. American Cyanamid Co.,* 506 F.2d 532 (2nd Cir.1974); *Standard & Poors's Corp. v. Commodity Exchange Inc.,* 541 F.Supp. 1273 (S.D.N.Y.1982); *Ampco v. O'Neill,* 273 Wis. 530, 78 N.W.2d 921 (1956). This harm was magnified by the testimony at the hearing which went beyond a mere description of the documents but laid out in detail how the information could be used by a competitor. Neither does the court consider the civil contempt hearing to raise the same first amendment interests as an actual trial. Indeed, it would place a litigant in an untenable position if by seeking to preserve the confidential nature of its business documents it would succeed as to opposing counsel only to have that information made available to competitors at the newsstand and on television. Hence the court considers the interests in the integrity of its orders and the potential harm to defendants to be substantial here.

On the other hand the infringement of the media's right to report the news and the public nature of court proceedings seems minimal. At the outset only that portion of the hearing necessary to protect confidential information was closed and the media was not restricted in any other way from reporting the proceedings. Further, at this time the court would modify its closure order to allow the media to have access to those portions of the transcript relating to Exhibits 170, 171, 172 and 173 (Consumer Complaints) and Exhibits 193, 194 and 195 (Physician Contacts).

Finally, the court would note in making this determination that it has considered not only the nature of the information, the media and public interest but also whether less restrictive alternatives to closing the proceedings are available and has concluded that there are none.